UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL E. RIVERA,<br><br>        Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security,<br><br>        Defendant. | Case No. EDCV 13-160 JC<br><br>MEMORANDUM OPINION |

**I.    SUMMARY**

On March 7, 2013, plaintiff Manuel E. Rivera ("plaintiff") filed a Complaint seeking review of the Commissioner of Social Security's denial of plaintiff's application for benefits. The parties have consented to proceed before a United States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The Court has taken both motions under submission without oral argument. See Fed. R. Civ. P. 78; L.R. 7-15; March 12, 2013 Case Management Order ¶ 5.

---

[1] Carolyn W. Colvin is substituted as Acting Commissioner of Social Security pursuant to Fed. R. Civ. P. 25(d).

Based on the record as a whole and the applicable law, the decision of the Commissioner is AFFIRMED.  The findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[2]

## II. BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On March 5, 2009 and June 24, 2009, respectively, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income. (Administrative Record ("AR") 265, 273).  Plaintiff asserted that he became disabled on July 1, 2008, due to hernias, diabetes, congestive heart failure, and sleep apnea. (AR 332).  The ALJ examined the medical record and heard testimony from plaintiff (who was represented by counsel), a medical expert and a vocational expert, at hearings on November 16, 2010 and August 9, 2011.  (AR 66-101, 107-38).

On September 2, 2011, the ALJ determined that plaintiff was not disabled through the date of the decision. (AR 19-34).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  morbid obesity, diabetes mellitus, history of abdominal wall hernias, and sleep apnea (AR 22); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal a listed impairment (AR 25-26); (3) plaintiff retained the residual functional capacity to perform a modified range of sedentary to light work (20 C.F.R. §§ 404.1567(a)-(b), 416.967(a)-(b)) with additional limitations[3] (AR 26);

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability.  See Molina v. Astrue, 674 F.3d 1104, 1115-22 (9th Cir. 2012) (discussing contours of application of harmless error standard in social security cases) (citing, *inter alia*, Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006)).

[3]The ALJ determined that plaintiff:  (i) could "lift and carry 20 pounds occasionally and 10 pounds [sic]"; (ii) could stand and walk for two hours in an eight-hour workday, and sit for six hours in an eight-hour workday; (iii) could occasionally engage in postural activities, such as climbing, balancing, kneeling, crouching, crawling and stooping; (iv) could not climb ropes or ladders; and (v) could occasionally be exposed to heights and hazardous machinery.  (AR 26).

(4) plaintiff could not perform his past relevant work (AR 31-32); (5) there are jobs that exist in significant numbers in the national economy that plaintiff could perform (AR 33); and (6) plaintiff's allegations regarding his limitations were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment (AR 29).

The Appeals Council denied plaintiff's application for review. (AR 1).

### III. APPLICABLE LEGAL STANDARDS

#### A. Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012) (quoting 42 U.S.C. § 423(d)(1)(A)) (internal quotation marks omitted). The impairment must render the claimant incapable of performing the work the claimant previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2) Is the claimant's alleged impairment sufficiently severe to limit the claimant's ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3) Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R.

///

     Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.
     If not, proceed to step four.

 (4) Does the claimant possess the residual functional capacity to perform claimant's past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

 (5) Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow the claimant to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920); see also Molina, 674 F.3d at 1110 (same).

   The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1098); see also Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (claimant carries initial burden of proving disability).

  **B.** **Standard of Review**

   Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ. Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV. DISCUSSION

### A. The ALJ Properly Evaluated Plaintiff's Credibility

#### 1. Pertinent Law

Questions of credibility and resolutions of conflicts in the testimony are functions solely of the Commissioner. Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006). If the ALJ's interpretation of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment. Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007) (citing Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)). If the record establishes the existence of a medically determinable impairment that could reasonably give rise to symptoms assertedly suffered by a claimant, an ALJ must make a finding as to the credibility of the claimant's statements about the symptoms and their functional effect. Robbins, 466 F.3d 880 at 883 (citations omitted). Where the record includes objective medical evidence that the claimant suffers from an impairment that could reasonably produce the symptoms of which the claimant complains, an adverse credibility finding must be based on clear and convincing reasons. Carmickle v. Commissioner, Social Security Administration, 533 F.3d 1155, 1160 (9th Cir. 2008) (citations omitted). The only time this standard does not apply is when there is affirmative evidence of malingering. Id. The ALJ's

credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).

To find the claimant not credible, an ALJ must rely either on reasons unrelated to the subjective testimony (*e.g.*, reputation for dishonesty), internal contradictions in the testimony, or conflicts between the claimant's testimony and the claimant's conduct (*e.g.*, daily activities, work record, unexplained or inadequately explained failure to seek treatment or to follow prescribed course of treatment). Orn, 495 F.3d at 636; Robbins, 466 F.3d at 883; Burch, 400 F.3d at 680-81; Social Security Ruling ("SSR") 96-7p. Although an ALJ may not disregard such claimant's testimony solely because it is not substantiated affirmatively by objective medical evidence, the lack of medical evidence is a factor that the ALJ can consider in his credibility assessment. Burch, 400 F.3d at 681.

### 2. Analysis

Plaintiff contends that the ALJ inadequately evaluated the credibility of his subjective complaints. (Plaintiff's Motion at 4-10). The Court disagrees.

First, the ALJ properly discredited plaintiff's subjective complaints as inconsistent with plaintiff's daily activities and other conduct. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (inconsistency between the claimant's testimony and the claimant's conduct supported rejection of the claimant's credibility); Verduzco v. Apfel,188 F.3d 1087, 1090 (9th Cir. 1999) (inconsistencies between claimant's testimony and actions cited as a clear and convincing reason for rejecting the claimant's testimony). For example, as the ALJ noted, contrary to plaintiff's allegations of disabling symptoms, plaintiff testified that he could take a shower, make a sandwich and drive once or twice a week, and plaintiff reported that he shops in stores once a month, attends church,

and is able to perform some activities of self care.  (AR 30, 76-77, 78, 86-87, 380, 382-83).

While plaintiff correctly notes that "claimants [need not] be incapacitated to be eligible for benefits," see Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (citation omitted), this does not mean that an ALJ must find that a claimant's daily activities demonstrate an ability to engage in full-time work (*i.e.*, eight hours a day, five days a week) in order to discount the credibility of conflicting subjective symptom testimony.  See Molina, 674 F.3d at 1113 ("[An] ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting . . . [e]ven where those activities suggest some difficulty functioning. . . .") (citations omitted).  Here, the ALJ properly discredited plaintiff's subjective symptom testimony to the extent plaintiff's daily activities were inconsistent with the "virtual absence of any activity" plaintiff alleged.  Id.; see, e.g., Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990) (finding that the claimant's ability to "take care of her personal needs, prepare easy meals, do light housework and shop for some groceries . . . may be seen as inconsistent with the presence of a condition which would preclude all work activity") (citing Fair, 885 F.2d at 604).

Second, the ALJ properly discounted plaintiff's credibility because plaintiff's medical treatment was "largely routine."  See, e.g., Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007) ("[E]vidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment."), cert. denied, 552 U.S. 1141 (2008) (citation omitted).  For example, as the ALJ noted, treatment records generally reflect that plaintiff received "standard medical treatment for common, ordinary medical problems."  (AR 30; see, e.g., AR 456-68, 581-93, 596, 616-34, 677-91, 693-702).  While plaintiff argues that the foregoing reflects treatment which "has not been routine" (Plaintiff's Motion at 6), the Court will not second-guess the ALJ's reasonable determination to the

contrary, even if the evidence could give rise to inferences more favorable to plaintiff.

Third, the ALJ properly discounted plaintiff's credibility in part based on plaintiff's unexplained failure to seek treatment consistent with the alleged severity of his subjective complaints. See Bunnell v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991) (en banc) (In assessing credibility, the ALJ may properly rely on plaintiff's unexplained failure to request treatment consistent with the alleged severity of her symptoms.). For example, as the ALJ noted, although an examining physician reported that plaintiff was prescribed a C-PAP machine which produced "mild improvement of [plaintiff's] symptoms," plaintiff testified that he would not use it because he is "claustrophobic." (AR 27, 82, 496).

Fourth, the ALJ properly discredited plaintiff's subjective complaints due to evidence that plaintiff was convicted and imprisoned for robbery. See, e.g., Albidrez v. Astrue, 504 F. Supp. 2d 814, 822 (C.D. Cal. 2007) (ALJ may discount credibility based on claimant's felony convictions for crimes involving moral turpitude (*i.e.*, attempted robbery)) (citations omitted); cf. Hardisty v. Astrue, 592 F.3d 1072, 1080 (9th Cir. 2010) (no abuse of discretion where district court denied social security claimant's request for attorney fees pursuant to Equal Access to Justice Act based, in part, on determination that government was "substantially justified" in discounting claimant's credibility due to claimant's criminal convictions), cert. denied, 131 S. Ct. 2443 (2011); see also Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) ("In assessing the claimant's credibility, the ALJ may use 'ordinary techniques of credibility evaluation,' such as considering the claimant's reputation for truthfulness and any inconsistent statements in her testimony.").

Fifth, the ALJ was entitled to discredit plaintiff based on evidence that plaintiff failed to attend a consultative examination and refused to reschedule the appointment. (AR 31) (citing Ex. 16F at 1 [AR 661]); see, e.g., Zamora v.

Commissioner of Social Security Administration, 471 Fed. Appx. 579, 580 (9th Cir. 2012) (ALJ did not err in discounting claimant's credibility "due to her failure to attend either of two scheduled consultative evaluations") (citing Fair, 885 F.2d at 603).

Finally, the ALJ properly discounted plaintiff's credibility in part because plaintiff's subjective symptom allegations were not fully corroborated by the objective medical evidence. See Rollins, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects.") (citation omitted). For example, the ALJ noted (and plaintiff points to no evidence to the contrary) that plaintiff's medical records contain little evidence of clinical abnormalities usually associated with diabetes. (AR 25, 30) (citing Exhibits 4F at 6 [AR 496] (no signs of diabetic neuropathy), 13F at 6 [AR 645] (intact motor function, sensation and reflexes)). While plaintiff also claimed to have "blurry vision," two consultative examinations noted that plaintiff had 20/20 vision. (AR 30) (citing Exhibits 4F at 5 [AR 495], 13F at 4 [AR 643]).

Accordingly, a remand or reversal on this basis is not warranted.

**B.     The ALJ Properly Evaluated the Medical Opinion Evidence**

      **1.     Pertinent Law**

In Social Security cases, courts employ a hierarchy of deference to medical opinions depending on the nature of the services provided. Courts distinguish among the opinions of three types of physicians: those who treat the claimant ("treating physicians") and two categories of "nontreating physicians," namely those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted). A treating physician's opinion is entitled to more weight than an examining

physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion.[4]  See id.  In general, the opinion of a treating physician is entitled to greater weight than that of a non-treating physician because the treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual."  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir. 1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

      The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons.  Orn, 495 F.3d at 632 (citation and internal quotations omitted).  The ALJ can reject the opinion of a treating physician in favor of another conflicting medical opinion, if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record.  Id. (citation and internal quotations omitted); Thomas, 278 F.3d at 957 (ALJ can meet burden by setting out detailed and thorough summary of facts and conflicting clinical evidence, stating his interpretation thereof, and making findings) (citations and quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite "magic words" to reject a treating physician opinion – court may draw specific and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather

---

[4] Cf. Le v. Astrue, 529 F.3d 1200, 1201-02 (9th Cir. 2008) (not necessary or practical to draw bright line distinguishing treating physicians from non-treating physicians; relationship is better viewed as series of points on a continuum reflecting the duration of the treatment relationship and frequency and nature of the contact) (citation omitted).

10

than the [physician's], are correct." Id. "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

### 2. Pertinent Facts

On March 18, 2010, Dr. Vernal Hansen, one of plaintiff's treating physicians, completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) form in which he diagnosed plaintiff with multiple impairments (*i.e.*, abdominal pain, history of hernia, hypertension, morbid obesity, diabetes mellitus, congestive heart failure, sleep apnea, depression, asthma, insomnia and back pain) and checked boxes indicating that plaintiff: (i) could essentially lift no weight; (ii) could sit for seven hours, stand for 30 minutes, and walk for 30 minutes total in an eight-hour work day; (iii) could only occasionally reach, handle, finger, feel, push/pull, and operate foot controls; (iv) could never work around unprotected heights, humidity/wetness, dust/odors/fumes/pulmonary irritants, or extreme cold/heat; (v) could only occasionally work around vibrations and moving mechanical parts, and occasionally operate a motor vehicle; but (vi) could perform multiple activities of daily living (*i.e.*, shop, travel without a companion for assistance, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with the use of a singe hand rail, prepare a simple meal/feed himself, care for personal hygiene, and sort/handle/use paper or files) (collectively "Dr. Hansen's Opinions"). (AR 671-75).

The ALJ rejected Dr. Hansen's Opinions to the extent they were "inconsistent with [plaintiff] performing sedentary exertional work." (AR 28-29).

### 3. Analysis

Plaintiff contends that a reversal or remand is warranted because the ALJ failed properly to consider Dr. Hansen's Opinions. (Plaintiff's Motion at 10-13). The Court disagrees.

11

First, Dr. Hansen's March 18, 2010 form contained only check-the-box opinions. (AR 671-75). As the ALJ essentially noted, the form does not mention any clinical findings which would support Dr. Hansen's multiple diagnoses for plaintiff; nor does it contain any explanation of the bases for the treating physician's conclusions that plaintiff had the significant physical limitations identified. (AR 29, 671-75). The ALJ properly rejected Dr. Hansen's Opinions on this basis alone. See Crane v. Shalala, 76 F.3d 251, 253 (9th Cir. 1996) (ALJ properly rejected doctors' opinions because they were check-off reports that did not contain any explanation of the bases of their conclusions); see also De Guzman v. Astrue, 343 Fed. Appx. 201, 209 (9th Cir. 2009) (ALJ "is free to reject 'check-off reports that d[o] not contain any explanation of the bases of their conclusions.'") (citing id.); Murray v. Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical opinions over check-off reports).

Second, the ALJ also properly rejected Dr. Hansen's Opinions because they were not supported by the physician's own notes or the record as a whole. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.") (citation and internal quotation marks omitted); Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly rejected where treating physician's treatment notes "provide no basis for the functional restrictions he opined should be imposed on [the claimant]"). For example, as the ALJ noted, the treatment records provided by Dr. Hansen's office (many of which appear to have been prepared by other medical providers) do not show that any objective testing was conducted other than cursory physical examinations (which essentially showed normal functioning overall), contain little, if any, mention of the significant physical limitations identified in Dr. Hansen's Opinions, and ultimately

suggest that treatment was based mostly on plaintiff's subjective complaints. (AR 28-29) (citing Exhibits 20F [AR 676-91], 21F [AR 692-702]).

Third, the ALJ properly rejected Dr. Hansen's Opinions to the extent they were inconsistent with plaintiff's own assertions regarding his abilities. See Magallanes, 881 F.2d at 751-52; see also Morgan, 169 F.3d at 601-02 (ALJ may reject medical opinion that is inconsistent with other evidence of record, such as a claimant's activities). For example, as the ALJ noted, although Dr. Hansen opined that plaintiff could do no lifting at all, plaintiff testified that he could lift "[m]aybe five pounds, maybe a little less." (Compare AR 83 with AR 671). As the ALJ also noted, Dr. Hanson's opinions that plaintiff could perform a variety of activities of daily living (*i.e.*, walk a block at a reasonable pace on rough or uneven surfaces, prepare a simple meal and feed himself, care for personal hygiene) (AR 675) are inconsistent with plaintiff's own assertions regarding his abilities (*i.e.*, plaintiff asserted that he could not walk "too far" (AR 81), was unable to prepare his own meals or feed himself (AR 380-81), and was significantly limited in his abilities to care for his own personal hygiene (AR 76-77, 380)).

Fourth, the ALJ properly rejected Dr. Hansen's Opinions in favor of the conflicting opinions of the state-agency examining physicians, Dr. Concepcion Enriquez (who determined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for four hours and sit for six hours in an eight-hour work day with normal breaks, and could occasionally bend, stoop and twist) (AR 645) and Dr. Seung Ha Lim (who determined that plaintiff could lift/carry 20 pounds occasionally and 10 pounds frequently, could stand/walk for four hours and sit for six hours in an eight-hour work day with normal breaks, and had postural limitations such as occasional stooping and climbing) (AR 497), and the testimony of the medical expert, Dr. Alan Coleman (upon which the ALJ based his residual functional capacity assessment for plaintiff) (AR 26, 119-20). The

opinions of Drs. Enriquez and Lim were supported by each physician's independent examination of plaintiff (AR 493-97, 642-46), and thus, even without more, constituted substantial evidence upon which the ALJ could properly rely to reject the treating physician's opinions. See, e.g., Tonapetyan, 242 F.3d at 1149 (consultative examiner's opinion on its own constituted substantial evidence, because it rested on independent examination of claimant); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). Dr. Coleman's testimony also constituted substantial evidence supporting the ALJ's decision since it was supported by the other medical evidence in the record as well as the opinions and underlying independent examinations of Drs. Enriquez and Lim. See Morgan, 169 F.3d at 600 (testifying medical expert opinions may serve as substantial evidence when "they are supported by other evidence in the record and are consistent with it").

      Finally, Dr. Coleman did not, as plaintiff contends (Plaintiff's Motion at 12), rely solely on the same medical records as Dr. Hansen. Cf., e.g., Orn, 495 F.3d at 632 ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not '"substantial evidence."'"). Instead, as the ALJ noted, Dr. Coleman also relied, in part, on the opinions of Drs. Enriquez and Lim which, in turn, were based on such examining physicians' independent clinical findings (*i.e.*, "findings based on objective medical tests that the treating physician has not [] considered"). See id. ("[W]hen an examining physician provides 'independent clinical findings that differ from the findings of the treating physician,' such findings are 'substantial evidence.'") (citations omitted).

      Accordingly, a remand or reversal on this basis is not warranted.

///
///
///
///

### C. The ALJ Did Not Materially Err in Considering Plaintiff's Obesity

#### 1. Applicable Law

In <u>Celaya v. Halter</u>, 332 F.3d 1177 (9th Cir. 2003), the Ninth Circuit held that an ALJ should consider the effect of the claimant's obesity, in combination with the claimant's other impairments, on the claimant's health and ability to work even where the claimant does not raise the issue. <u>Id.</u> at 1182. The Ninth Circuit came to this conclusion for three reasons: (1) the claimant had implicitly raised the issue of obesity in her report of symptoms; (2) the record clearly showed that the claimant's obesity was at least close to the listing criterion, and was a condition that could exacerbate the claimant's reported illness; and (3) in light of the claimant's *pro se* status, the ALJ's personal observation of the claimant and the information in the record should have alerted him to the need to develop the record on the claimant's behalf. <u>Burch</u>, 400 F.3d at 682 (citing <u>Celaya</u>, 332 F.3d at 1182).

More recently, in <u>Burch</u>, the Ninth Circuit distinguished its holding in <u>Celaya</u>, finding no reversible error in the ALJ's failure to consider the claimant's obesity at multiple steps of the sequential evaluation process where (1) the claimant was represented by counsel; (2) the record did not indicate that the claimant's obesity exacerbated the claimant's other impairments (other than possibly her back pain), and (3) the claimant failed to (a) specify which listing the claimant believed the claimant met or equaled; (b) did not set forth any evidence which would support the diagnosis and findings of a listed impairment; and (c) pointed to no evidence of functional limitations due to obesity which would have impacted the ALJ's analysis. <u>Burch</u>, 400 F.3d at 682-84.

#### 2. Analysis

Plaintiff contends that a reversal or remand is warranted essentially because the ALJ erroneously failed to consider the combined effect of plaintiff's obesity

15

and plaintiff's "non-severe impairments of hypertension, shortness of breath, back pain, diabetes, sleep apnea and depression" in assessing residual functional capacity. (Plaintiff's Motion at 15). The Court disagrees.

First, plaintiff's assertion is belied by the record. Specifically, the ALJ stated in his decision that plaintiff failed to present "any nexus between obesity and additional limitations, or suggest[] any theory under which [the ALJ] could find aggravation or exacerbation due to [obesity]" (AR 28), which reflects that the ALJ did consider the effect of obesity on plaintiff's other impairments.

Second, even so, the record does not reflect that plaintiff's obesity exacerbated any other impairment (severe or non-severe), or if it did, that plaintiff suffered any resulting limitations beyond those already accounted for in the ALJ's residual functional capacity. For example, as the ALJ noted, the record does not contain evidence of any medically determinable impairment (*e.g.*, lung or heart trouble), much less any functional limitations related to plaintiff's complaint of shortness of breath. See Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (ALJ must consider only "significant probative evidence") (citation omitted); cf. Ukolov v. Barnhart, 420 F.3d 1002, 1004-05 (9th Cir. 2005) (citing 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D)) (plaintiff has burden to present evidence of medical signs, symptoms and laboratory findings[5] that establish a medically determinable physical or mental impairment). To the contrary, physical examinations and objective testing reflected normal heart and lung functioning for plaintiff. (AR 22) (citing Exhibits 1F at 15 [AR 443] (lungs "clear to auscultation bilaterally"), 3F at 5 [AR 475] ("lungs [] clinically clear . . . [n]o rales or wheezing," "heart sounds . . . normal . . . regular rhythm with no gallop"), 4F at 5

---

[5]A medical "sign" is "an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical and laboratory diagnostic techniques[.]" Ukolov, 420 F.3d at 1005 (quoting SSR 96-4p). A "symptom" is "an individual's own perception or description of the impact of his or her physical or mental impairment(s)[.]" Id. (quoting SSR 96-4p); see also 20 C.F.R. §§ 404.1528(a)-(b), 416.928(a)-(b).

[AR 495] (lungs "clear to auscultation [with] normal excursion with respirations," heart has "[r]egular rhythm with . . . no murmurs or [] gallops, rubs or heaves"), 13F at 5 [AR 644] (same), 20F at 3 [AR 678] (chest x-ray showed normal heart and clear lungs with no evidence of pneumonia or pulmonary edema)).  In addition, as the ALJ noted, plaintiff's complaint of back pain also lacks support in the medical record.  (AR 23) (citing Exhibits 4F at 6 [AR 496] (decreased range of motion of the back, but no signs of radiculopathy, and no use of assistive device for ambulation); 13F at 5 [AR 644] (normal cervical spine and no tenderness in lumbosacral spine area)).

As for plaintiff's non-severe impairment of hypertension, the ALJ noted (and plaintiff points to no evidence to the contrary) that "there is nothing in the record to show that [plaintiff's] hypertension has any effect on [plaintiff's] functioning."  (AR 22).

Regarding plaintiff's severe impairment of diabetes, although, as the ALJ noted, treatment records documented elevated glucose levels in April and May 2009, plaintiff points to no evidence in the record that he experienced symptoms typically associated with uncontrolled diabetes (*i.e.*, diabetic neuropathy, complications of the eyes or nerves in plaintiff's legs, vascular problems).  (AR 27) (citing Exhibits 4F at 5, 6 [AR 495-96] (20/20 vision without correction, intact motor functioning, sensation and reflexes), 13F at 4, 6 [AR 643, 645] (same), 21F at 9 [AR 700] ("motor and sensory exams [] grossly intact")).  With respect to plaintiff's severe impairment of sleep apnea, as the ALJ noted, apart from Dr. Lim's assertion in the report of his internal medicine consultation that plaintiff "[was] on C-PAP with mild improvement of his symptoms" (AR 496), "the record contains little evidence to support finding limitations related to [sleep apnea]."  (AR 27).  As for plaintiff's alleged depression, the ALJ found, and plaintiff did not persuasively dispute, that the record lacks "reliable evidence that [plaintiff's

///

depression] persisted or would be expected to persist for 12 months [or more]." (AR 23).

In short, on the facts presented here, plaintiff has failed to show that the ALJ's assessment and findings regarding plaintiff's obesity were erroneous. Cf. Hoffman v. Astrue, 266 Fed. Appx. 623, 625 (9th Cir. 2008) (ALJ's failure to consider plaintiff's obesity in relation to residual functional capacity proper because plaintiff failed to show how obesity in combination with another impairment increased severity of limitations); see also Burton v. Astrue, 310 Fed. Appx. 960, 961 n.1 (9th Cir. 2009) (rejecting plaintiff's assertion that ALJ failed adequately to consider plaintiff's obesity where plaintiff failed to specify how his obesity limited his functional capacity or how it exacerbated his currently existing condition; noting that ALJ's consideration of obesity in overall assessment that plaintiff was capable of working was proper).

Accordingly, a remand or reversal on this basis is not warranted.

**V.  CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: July 26, 2013

                                         /s/
                             Honorable Jacqueline Chooljian
                             UNITED STATES MAGISTRATE JUDGE